# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY VICTORY, | 1:05-cv-01578-LJO-DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT NEUBARTH'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| BARBER, et al., | (Doc. 43) |
| Defendants. | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST BE DENIED |
| | (Docs. 44-1 & 49-1) |
| | OBJECTION DUE WITHIN 10 DAYS |

**I.     Findings and Recommendations**

**A.     Procedural History**

Michael Anthony Victory ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint, filed October 16, 2006, against defendants C. Barber, R. D. Smith, N. Kushner, P. Bresler, F. Salazar, M. D. Sacks, Neubarth, and Ortiz ("Defendants") for

deliberate indifference to Plaintiff's medical needs, in violation of Plaintiff's Eighth Amendment rights. On August 22, 2008, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Neubarth filed a motion to dismiss for failure to state a claim upon which relief may be granted. (Doc. 43.) On August 22, 2008, pursuant to the unenumerated portion of Federal Rule of Civil Procedure 12(b), defendants Ortiz, Bresler, Smith, and Barber filed a motion to dismiss based on Plaintiff's failure to exhaust the available administrative remedies in compliance with 42 U.S.C. § 1997e(a). (Doc. 44-1.) On September 18, 2008, defendants Sacks, Salazar, and Kushner also filed a motion to dismiss for failure to exhaust available administrative remedies. (Doc. 49-1.) On October 23, 2008, Plaintiff filed an opposition against all of Defendants' motions to dismiss. (Doc. 52.)[1] The Court will address each motion separately as set forth below.

**B.    Motion to Dismiss for Failure to State a Claim**

*1.    Legal Standard*

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The federal system is one of notice pleading. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which apply to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.

---

[1] Defendants had filed three separate Motions to Dismiss. Plaintiff twice requested extension of time to file his Opposition, one after Defendants' second motion (Doc. 44-1), and another after Defendants' third motion (Doc. 49-1). (See Docs. 46 & 50.) The Court granted both of Plaintiff's motions. (See Docs. 48 & 51.) Plaintiff filed his Opposition within the allotted time ordered by the Court. (Doc. 51.)

2

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Id. at 512. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). The Court notes that the legal standard for granting a motion to dismiss for failure to state a claim is the same as the one used by the Court in screening Plaintiff's complaint.

### *2.* *Defendant Neubarth's Motion*

In Neubarth's motion, Defendant argues that his motion to dismiss should be granted because 1) Neubarth is no longer employed by Pleasant Valley State Prison ("PVSP") so no injunctive relief can be granted; 2) Neubarth is entitled to qualified immunity; and 3) Plaintiff has alleged no facts that support an Eighth Amendment violation either during Neubarth's examination or because of Neubarth's presence on the Chrono Committee that denied Plaintiff's chrono. (Doc. 43, pp. 5-10.)

In his opposition, Plaintiff contends that 1) Neubarth may still be working at a California Department of Corrections and Rehabilitation ("CDCR") facility, and if Plaintiff should be transferred there, he will have need of an injunction; 2) Neubarth is not entitled to qualified immunity; and 3) Plaintiff's allegations are sufficient for an Eighth Amendment claim. (Doc. 52,

pp. 34-40.) The Court will address each argument as set forth below.

### a. Injunctive Relief

Defendant contends that because Neubarth is no longer an employee of PVSP, there is no case-or-controversy and thus Plaintiff's claim for injunctive relief is moot. (Doc. 43, pp. 5-6.) Defendant refers to Document 35, Waiver of Service Returned Executed by the U.S. Marshals. Neubarth's former employment address is listed as PVSP. (Doc. 35.) Plaintiff argues that an injunction may be necessary if Plaintiff is transferred to a facility in which Neubarth is potentially working. (Doc. 52, pp. 35-36.)

When an inmate seeks injunctive or declaratory relief concerning an institution at which he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Plaintiff has demonstrated no reasonable possibility that he will be incarcerated at a facility in which Neubarth works at any predictable time in the future. See Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986). Such an argument is too speculative.

The Court thus finds that Plaintiff's request for injunctive relief against Neubarth should be dismissed as moot.

### b. Qualified Immunity

Defendant Neubarth contends that he is entitled to qualified immunity. (Doc. 43, pp. 6-7.) Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled in part by* Pearson v. Callahan, 129 S. Ct. 808, 813 (2009) ("Saucier procedure should not be regarded as an inflexible

requirement"). The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Here, Plaintiff alleges that Neubarth's conduct violated Plaintiff's Eighth Amendment right which guarantees medical care without deliberate indifference to a serious medical need. Plaintiff contends that his injury occurred on September 2003, when Plaintiff slipped and fell on metal stairs, injuring himself. Plaintiff suffered a laceration, swelling and pain in his right knee and shoulder, and back injuries. On December 12, 2003, Plaintiff was scheduled for a follow-up appointment with Dr. Neubarth. Plaintiff contends that Neubarth was aware of Plaintiff's prior medical history, which included a chronic degenerative disc disease in his lower back and Osgood Schlatter disease. Plaintiff contends that at a previous appointment, Dr. Kushner had told Plaintiff if his injury persisted, he should request an MRI or X-ray for his back, knee, and right shoulder from the doctor at his next visit. Plaintiff made his request, but Dr. Neubarth refused. Plaintiff contends that he also requested a one-year renewal for a low tier, low bunk and an eggcrate mattress chrono because of Plaintiff's medical history. Neubarth only ordered a ninety day low bunk, not necessarily low tier, chrono. Plaintiff's request for adequate pain medication was also denied. Neubarth would only continue Dr. Kushner's previous prescription of medication. Plaintiff alleges pain and suffering as a result of Neubarth's inaction. (Doc. 52, pp. 45-47.) Plaintiff contends that he received a partial grant of his appeal at the first level, in

1  which the Chrono Committee would review his chrono requests.  The Chrono Committee denied

2  Plaintiff's request.  Plaintiff alleges that Neubarth's presence on the Chrono Committee created a

3  conflict of interest.  (Doc. 52, Exh. E.)

4       Based on these allegations, Plaintiff has asserted a cognizable claim for an Eighth

5  Amendment violation against defendant Neubarth.  Plaintiff has alleged that Neubarth knew of

6  an excessive risk to Plaintiff's health and disregarded it: Neubarth knew of Plaintiff's previous

7  medical history and through his action exacerbated Plaintiff's pain.  Plaintiff has satisfied the

8  initial inquiry of whether, taken in the light most favorable to the party asserting the injury, the

9  facts alleged show the defendant's conduct violated a constitutional right.  Saucier, 533 U.S. at

10  201.

11       The next inquiry is whether the right is sufficiently clear such that "a reasonable official

12  would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

13  Defendant Neubarth contends that a reasonable doctor would not have known that a difference of

14  opinion is a constitutional violation.  (Doc. 43, p. 9.)  The Eighth Amendment's prohibition

15  against cruel and unusual punishment clearly applies in the context of deliberate indifference to a

16  serious medical need.  The Court finds that the alleged facts, taken in the light most favorable to

17  Plaintiff, indicate that a reasonable official would understand he is violating Plaintiff's

18  constitutional rights through these actions.  These are not mere differences in opinion that the

19  Plaintiff alleges, but rather a knowing disregard of an excessive risk to Plaintiff's health.  Under

20  the notice pleading standard, Plaintiff has alleged sufficient facts to support a cognizable claim.

21  A challenge to the merits of a claim, as opposed to the pleading of a claim, is best done through a

22  motion for summary judgment.  See Swiekiewicz, 534 U.S. at 512.

23       Accordingly, the Court finds that 1) Plaintiff has stated a cognizable claim for an Eighth

24  Amendment violation against Neubarth and 2) Neubarth is not entitled to qualified immunity.

25  Neubarth's motion to dismiss for failure to state a claim should be denied.

26  ///

C. **Motion to Dismiss For Failure to Exhaust Available Administrative Remedies**

   *1. Legal Standard*

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Chruner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 127 S. Ct. at 921; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal.Code Regs., tit. 15 § 3084.1 (2007). The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. Appeals must be submitted within fifteen working days

of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 126 S. Ct. 2378, 2383 (2006); McKinney, 311 F.3d at 1199-1201.

Plaintiff does not have to name each defendant in his grievance form. See Jones v. Bock, 127 S. Ct. 910, 923 (2007) ("The level of detail necessary in a grievance to comply with the grievances procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion . . . . [E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."). The inmate appeal form CDC-602 does not require identification of specific individuals. See Cal. Code Regs., tit. 15 § 3084.2(a).

### 2. *Ortiz, Bresler, Barber, Smith, Kushner, Sacks, and Salazar's Motions*

The Defendants argue the following in support of their motion for dismissal. Regarding Ortiz, Defendants contend that 1) Plaintiff's two appeals concerning medical treatment do not concern Ortiz; and 2) Plaintiff failed to appeal his second grievance past the second level of review and thus did not properly exhaust this grievance.

Regarding Bresler, Smith, and Barber, Defendants contend that 1) Plaintiff's two appeals were filed before the alleged actions by Bresler, Smith, and Barber and thus cannot be used for exhaustion purposes; 2) Plaintiff's second appeal does not give notice of claims against Bresler, Smith, or Barber; and 3) regarding Plaintiff's second grievance, Plaintiff failed to appeal past the second level of review. (Doc. 44-1, pp. 7-9.)

Regarding Kushner, Defendants argue that 1) Plaintiff's first appeal was filed before Kushner's alleged actions and thus cannot be relied on for exhaustion purposes and 2) regarding Plaintiff's second grievance, Plaintiff failed to appeal past the second level of review.

Regarding Salazar, Defendants argue that 1) Plaintiff's first appeal was filed before Salazar's alleged action; 2) Plaintiff's first appeal should not be expanded to include Plaintiff's

disagreement with Salazar's first level review; 3) Plaintiff's second appeal does not concern Salazar; and 4) regarding Plaintiff's second grievance, Plaintiff failed to appeal past the second level of review.

Regarding Sacks, Defendants argue that 1) Plaintiff's first appeal was filed before Sacks's alleged actions; 2) neither of Plaintiff's appeals concern Sacks; 3) Plaintiff's first appeal should not be expanded to include Sacks solely because he did the second level review; and 4) regarding Plaintiff's second grievance, Plaintiff failed to appeal past the second level of review.

Defendants submit evidence that Plaintiff filed two grievances concerning medical issues, PVSP-C-04-00122 and PVSP-C-05-01182. (Docs. 44-2, Huckabay Decl., & 44-3, Grannis Decl.) Grievance PVSP-C-04-00122 was partially granted at the second level of review (Doc. 44-2, p. 2, ¶ 4), and partially granted at the Director's level. (Doc. 44-3, p. 5.) It concerned Plaintiff's complaint regarding medical care stemming from Plaintiff's injury on September 2003. (Doc. 44-2, pp. 5-7.) Grievance PVSP-C-05-01182 was denied at the second level of review and not appealed further. It also concerned Plaintiff's medical care. (Doc. 44-2, p. 2, ¶ 4.)

In his opposition, Plaintiff submits evidence in support of his arguments against each Defendant. The Court will examine each grievance as it pertains to each defendant.

### a. Grievance PVSP-C-04-00122

### A. Defendant Ortiz

Grievance PVSP-C-04-00122, filed December 30, 2003, concerns alleged conduct by Dr. Neubarth, including his failure to renew one-year chronos for Plaintiff's long-term medical conditions, failure to schedule an MRI, and failure to provide adequate pain medicine prescription. (Doc. 44-2, pp. 5-7.) With regards to Ortiz, the Defendants contend that Plaintiff filed his grievance before Ortiz's alleged interference with Plaintiff's medical prescription occurred. Ortiz allegedly interfered with Plaintiff's prescription on March 24, 2004. (Doc. 44-1, pp. 3, 7.) Defendants contend that the grievance thus fails to provide notice of Plaintiff's complaint alleged in this action and that Plaintiff should have filed an appeal after Ortiz's

alleged conduct in order to properly grieve and exhaust his claim.

In his opposition, Plaintiff alleges that he had an appointment with Ortiz on January 1, 2004. Plaintiff alleges that he showed Ortiz Grievance PVSP-C-04-00122. Plaintiff alleges that he made a request for his low bunk/low tier chrono, an extra mattress chrono, and an MRI or X-ray, but Ortiz denied them. Plaintiff argues that it would be wasteful to have to file separate grievances against each doctor for every complaint he had in this matter. (Doc. 52, pp. 19-20; Doc 52, Exh. A, Victory Decl., pp. 4-5.) Plaintiff submits as evidence his appeals to the second and Director level. In these appeals, Plaintiff mentions Dr Ortiz's alleged conduct of failing to order an MRI or X-ray for Plaintiff's knee, shoulder, and back (Doc. 52, Exh. E) and interrupting and interfering with Plaintiff's medication. (Doc. 52, Exh. F.)

Having examined all relevant evidence submitted regarding Grievance PVSP-C-04-00122, the Court finds that defendants have not met their burden regarding failure to exhaust administrative remedies.

In Grievance PVSP-C-04-00122, Plaintiff grieves a denial of Plaintiff's low bunk, low tier chrono, denial of his eggcrate mattress chrono, lack of adequate medical prescription, and a failure to order an MRI or x-ray for Plaintiff's injury from his September 2003 fall. (Doc. 44-2, p. 7.) Plaintiff's grievance concerns alleged improper medical treatment arising from Plaintiff's fall and subsequent medical care. Plaintiff appealed this grievance to the second and Director level, thus exhausting his available administrative remedies. (See Doc. 44-3, Grannis. Decl., Exh. A.) Prison officials were sufficiently put on notice as to Plaintiff's grievance for alleged actions arising from his injury and subsequent medical care. Grievance PVSP-C-04-00122 would thus encompass each Defendant involved in alleged improper medical treatment arising from Plaintiff's September 2003 fall. Consequently, Ortiz's alleged actions are within the scope of Grievance PVSP-C-04-00122.

Defendants rely upon Cal. Code Regs. tit. 15 § 3084.6(c), which states that an appellant must submit his appeal within fifteen working days of the event or decision being appealed, or of

receiving an unacceptable lower level appeal decision. (Doc. 44, p. 7.) This section does not change the analysis here with regards to exhaustion, since Plaintiff also specifically mentioned Ortiz in his appeals to the second and Director level. Ortiz allegedly failed to properly scan Plaintiff's shoulder, and did not order a scan for Plaintiff's back or knees. (Doc. 52, Exh. E.) Ortiz also allegedly interfered with and interrupted Plaintiff's medical prescription. (Doc. 52, Exh. F.) The Director's level considered "all submitted documentation and supporting argument of the parties." (Doc. 52, Exh. G .) Grievance PVSP-C-04-00122 thus concerns specific alleged actions by defendant Ortiz.

For the above reasons, Plaintiff has properly exhausted his administrative remedies with regards to Ortiz. Defendant Ortiz's motion to dismiss should be denied.

### B. Defendants Bresler, Smith, and Barber

With regards to Bresler, Smith, and Barber, Defendants contend that the grievance was filed before any alleged actions by them, and thus it cannot be used to satisfy exhaustion requirements. Bresler's alleged conduct occurred on March 29, 2005 (interview for first level review) and April 18, 2005 (first level appeal decision) (Doc. 44-1, p. 4); Smith's alleged conduct occurred on April 18, 2005 (first level appeal decision); and Barber's alleged conduct occurred on June 24, 2005 (second level appeal decision). (Doc. 44-1, p. 8.) All of these alleged actions arose from reviewing Plaintiff's second grievance, Grievance PVSP-C-05-01182, filed March 4, 2005.

In his opposition, Plaintiff argues that the three defendants are encompassed in Grievance PVSP-C-04-00122. In his appeal to the Director level, Plaintiff complains of "CDC Administrators and PVSP doctors . . . intentionally interfering with treatment that had previously been prescribed."(Doc. 52, Exh. F.) The Director's level considered "all submitted documentation and supporting argument of the parties." (Doc. 52, Exh. G .) Bresler, Smith, and Barber were responsible for reviewing Plaintiff's second grievance. Plaintiff contends, however, that his first 602 appeal put PVSP personnel on notice of Plaintiff's grievance regarding inadequate medical treatment subsequent to Plaintiff's September 2003 fall. (Doc. 52, p. 34;

Doc. 52, Exh. A, p. 5.)

As stated previously for defendant Ortiz, Plaintiff had sufficiently put PVSP officials on notice of Plaintiff's grievances in his first 602 appeal: failure to renew his low bunk, low tier chrono and his eggcrate mattress chrono; failure to prescribe adequate medical prescription; and failure to properly scan Plaintiff's injury from his fall. Plaintiff's second grievance concerns Kushner's failure to provide adequate pain medication, failure to renew Plaintiff's eggcrate mattress chrono, and failure to order a bone scan for Plaintiff' shoulder for a cyst. (Doc. 44-2; Doc. 52, Exhs. M & N.) Plaintiff contends in his second grievance a continued failure to provide adequate pain medication and a failure to receive a chrono for an eggcrate mattress. Since the second grievance does not assert an unrelated claim, Plaintiff had exhausted administrative remedies through his first grievance. Plaintiff alleges that Bresler, Smith, and Barber furthered Plaintiff's inadequate medical treatment when they became aware of Plaintiff's grievance but failed to remedy the problem. Defendants Bresler, Smith, and Barber are thus encompassed in Grievance PVSP-C-04-00122, and Plaintiff has exhausted administrative remedies against them. For the above reasons, defendants Bresler, Smith, and Barber's motion to dismiss should be denied.

### C. Defendant Kushner

With regards to Kushner, Defendants argue that Grievance PVSP-C-04-00122 was filed before Kushner's alleged actions and thus it cannot be relied on for exhaustion purposes. On February 15, 2005, Kushner allegedly treated Plaintiff for his back pain, failed to order treatment recommended by Dr. Tanji, failed to provide adequate medication, and falsified Plaintiff's medical chart. (Doc. 49-1, p. 4.) Defendants contend that this alleged action arose after Plaintiff's first grievance was filed. Defendants contend that Plaintiff did not properly exhaust with regards to this grievance. (Doc. 49-1, p. 7.)

In his opposition, as against the other Defendants, Plaintiff asserts that Grievance PVSP-C-04-00122 put Kushner and all PVSP personnel on notice of Plaintiff's complaint. Plaintiff contends that defendant Kushner's alleged actions violate the Director Level's order regarding this grievance. Plaintiff contends that he showed Kushner the Director's level order as well as

other materials in order to convince Kushner to order 1) treatment as recommended by Dr. Tanji, including a bone scan of Plaintiff's right shoulder, 2) an eggcrate mattress chrono and 3) adequate medical prescription. Plaintiff contends that Kushner's alleged actions would thus fall within the scope of Grievance PVSP-C-04-00122. (Doc. 52, pp. 25-27; Doc. 52, Exh. A, pp. 5-6.)

Grievance PVSP-C-04-00122 concerns Plaintiff's allegation of improper medical care for Plaintiff's September 2003 injury and denial of previous prescribed treatment.[2] Plaintiff had asked Kushner to grant Plaintiff's request for an eggcrate mattress chrono as well as providing adequate medical treatment, all of which Kushner refused to do. (Doc. 52, pp. 26-27; Doc. 52, Exh. A, Vict. Decl., pp. 5-6.) Plaintiff alleges that Kushner's actions furthered Plaintiff's unnecessary pain and discomfort. Because defendant Kushner was allegedly involved in continuing Plaintiff's inadequate medical care, defendant Kushner's alleged actions are encompassed within Grievance PVSP-C-04-00122. Plaintiff has thus properly exhausted his administrative remedies with regards to Kushner. Defendant Kushner's motion to dismiss should be denied.

### D. Defendants Salazar and Sacks

With regards to defendant Salazar, Defendants argue that Grievance PVSP-C-04-00122 was filed before Salazar's alleged actions and thus cannot be used for exhaustion purposes. Salazar allegedly reviewed Plaintiff's first level appeal on February 17, 2004, and allegedly ordered inadequate medication for Plaintiff on May 28, 2004. Defendants also allege that Plaintiff should have filed a separate grievance against Salazar in order to properly exhaust. (Doc. 49-1, pp. 8-9.)

In his opposition, Plaintiff contends that Salazar was involved in both Plaintiff's first level response and in providing allegedly inadequate pain medication. (Doc. 52, pp. 20-21.) Plaintiff contends that Salazar's inaction furthered Plaintiff's injury. (Doc. 52, Exh. E.)

---

[2] Grievance PVSP-C-04-00122 mentions Kushner as having examined Plaintiff on October 1, 2003. According to the grievance, Kushner prescribed pain medication, and stated that Plaintiff would have an MRI scheduled if pain persisted in Plaintiff's shoulder, back, and knee. (Doc. 44-2, p. 7.)

13

Like Plaintiff's argument regarding Ortiz, the Court finds Plaintiff's argument persuasive as to Salazar. Defendant Salazar's alleged conduct falls within the scope of Plaintiff's grievance. In addition, Plaintiff had raised his claims concerning Salazar's conduct in his appeal to the second and Director's level. (Doc. 52, Exhs. E & F.) The Director's level considered "all submitted documentation and supporting argument of the parties." (Doc. 52, Exh. G .) Plaintiff specifically named alleged conduct by Salazar in Plaintiff's grievance. Plaintiff has thus exhausted administrative remedies with regards to Salazar.

With regards to defendant Sacks, Defendants contend that Grievance PVSP-C-04-00122 does not concern Sacks. Sacks's alleged action occurred on March 30, 2004, when Sacks responded to Plaintiff's second level appeal. Defendants contend that Plaintiff should have filed a grievance against Sacks then. (Doc. 49-1, pp. 9-10.)

In his opposition, Plaintiff contends that Sacks was aware of Plaintiff's grievance by being involved at the first and second level review. (Doc. 52, Exhs. E & F.) Plaintiff contends that Sacks's failure to properly remedy Plaintiff's grievance led to further injury to Plaintiff.

The Court also finds Plaintiff's argument persuasive as to Sacks. Plaintiff had raised his complaint regarding Sacks's evaluation at the Director's level, and the Director's level considered Plaintiff's contentions. (Doc. 52, Exhs. F & G.) Plaintiff has thus exhausted administrative remedies with regards to Sacks. Defendant Salazar and Sacks's motion to dismiss should be denied.

### b. Grievance PVSP-C-05-01182

Grievance PVSP-C-05-01182, filed on March 4, 2005, concerns an examination by defendant Kushner. The grievance states that an orthopedist report by Dr. Tanji recommended a pain management specialist, an eggcrate mattress, and a bone scan of Plaintiff's right shoulder. The grievance concerns Kushner's refusal to implement the recommendations of Dr. Tanji. Plaintiff grieves the adequacy of pain medication prescribed. The grievance states that defendant Kushner 1) falsely reported that Plaintiff had refused treatment; 2) failed to approve an eggcrate mattress; and 3) failed to perform a physical examination of Plaintiff. (Doc. 44-2, p. 14.) Among other arguments, defendants Bresler, Smith, Barber, Kushner, Ortiz, Salazar, and Sacks

contend that Plaintiff failed to exhaust this grievance to the Director's level. (See Docs. 44-1 & 49-1.)

As stated previously, the Court found that Grievance PVSP-C-05-01182 concerns claims related to those raised in Grievance PVSP-C-04-00122. The Court had also found that Grievance PVSP-C-04-00122 was properly exhausted with regards to defendants Ortiz, Bresler, Smith, Barber, Kushner, Salazar, and Sacks. Thus, Defendants' arguments regarding Grievance PVSP-C-05-01182 do not change the analysis.

## II. Conclusion

Accordingly, the Court HEREBY RECOMMENDS that:

1. Defendant Neubarth's motion to dismiss for failure to state a claim, filed on August 22, 2008, be GRANTED in part with regards to injunctive relief and DENIED in part with regards to Neubarth's qualified immunity;

2. Defendants Ortiz, Bresler, Smith, Barber's motion to dismiss for failure to exhaust available administrative remedies, filed on August 22, 2008, be DENIED; and

3. Defendants Kushner, Salazar, and Sacks's motion to dismiss for failure to exhaust available administrative remedies, filed on September 18, 2008, be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **ten (10) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   February 26, 2009                    /s/ Dennis L. Beck
                                              UNITED STATES MAGISTRATE JUDGE