# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY VICTORY,<br><br>              Plaintiff,<br><br>  v.<br><br>BARBER, et al.,<br><br>              Defendants.<br>_____/ | CASE NO. 1:05-cv-01578-LJO-DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT NEUBARTH'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 43)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BE GRANTED IN PART AND DENIED IN PART<br><br>(Docs. 44 and 49)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

**I.**     <u>**Findings and Recommendations**</u>

    **A.**     <u>**Procedural History**</u>

Michael Anthony Victory ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint, filed October 16, 2006, against defendants C. Barber, R. D. Smith, N. Kushner, P. Bresler, F. Salazar, M. D. Sacks, Neubarth, and Ortiz ("Defendants") for deliberate indifference to Plaintiff's medical needs, in violation of Plaintiff's Eighth Amendment rights. On August 22, 2008, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Neubarth filed a motion to dismiss for failure to state a claim upon which relief may be granted. (Doc. 43.) On August 22, 2008, pursuant to the unenumerated portion of Federal Rule of Civil

1

Procedure 12(b), defendants Ortiz, Bresler, Smith, and Barber filed a motion to dismiss based on Plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). (Doc. 44.) On September 18, 2008, defendants Sacks, Salazar, and Kushner also filed a motion to dismiss for failure to exhaust administrative remedies. (Doc. 49.) On October 23, 2008, Plaintiff filed an opposition against all of Defendants' motions to dismiss. (Doc. 52.)[1] The Court will address each motion separately as set forth below.

### B. Summary of Plaintiff's Amended Complaint

Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP") at the time the alleged events which gave rise to this action occurred. In his amended complaint, Plaintiff alleges that he suffers from Osgood Schlatter disease, a degenerative disc disease, and osteoarthritis. (Doc. 12, Exh. A, Pl.'s Decl. ¶ 1.) Plaintiff allegedly suffered injuries in a September 2003 fall and grieved the inadequacy of Plaintiff's subsequent medical treatment. Plaintiff alleges that defendant Neubarth only ordered a ninety day low bunk chrono, and denied Plaintiff's requests for: 1-year low bunk chrono, 1-year low tier chrono, 1-year eggcrate mattress chrono, MRI tests on Plaintiff's low back, knees, and right shoulder, and a specialist to interpret the MRI. (Pl.'s Decl. ¶¶ 1-2.) Plaintiff also alleges that defendant Neubarth had a conflict of interest by being on the Chrono committee that denied Plaintiff's requested chronos. (Pl.'s Decl. ¶ 5.) Plaintiff alleges that defendant Salazar, in his review of Plaintiff's grievance, submitted requests for Plaintiff's chronos and for referral to an orthopedic specialist for determination of the necessity of an MRI for Plaintiff's knees and shoulder. (Pl.'s Decl. ¶ 4.) Defendant Salazar failed to include a request for MRI for Plaintiff's low back. (Pl.'s Decl. ¶ 4.) Plaintiff further alleges that defendants Ortiz and Salazar interfered and interrupted any renewal of Plaintiff's prescription for Neurontin without prescribing equivalent alternative medication. (Pl.'s Decl. ¶ 6.)

Plaintiff alleges he was seen by Dr. Tanji, an orthopedic specialist, who recommended a pain management specialist, an eggcrate mattress, and a bone scan of Plaintiff's right shoulder.

---

[1] Defendants filed three separate Motions to Dismiss. Plaintiff twice requested extension of time to file his Opposition, once after Defendants' second motion (Doc. 44), and after Defendants' third motion (Doc. 49). (See Docs. 46 & 50.) The Court granted both of Plaintiff's motions. (See Docs. 48 & 51.) Plaintiff filed his Opposition within the allotted time ordered by the Court. (Doc. 51.)

2

1  (Pl.'s Decl. ¶ 10.)  Plaintiff alleges that defendant Kushner denied referral to a pain management
2  specialist, 1-year renewal of the eggcrate chrono, bone scan of Plaintiff's right shoulder, and
3  denied previously prescribed medications (such as Celebrex) other than Tylenol.  (Pl.'s Decl.
4  ¶¶12-14.)  Plaintiff alleges  that defendant Kushner falsely reported that Plaintiff had refused
5  treatment. (Pl.'s Decl. ¶12.) Plaintiff alleges that defendant Bresler ignored Plaintiff's complaints
6  regarding defendant Kushner's treatment.  (Pl.'s Decl. ¶¶ 15-16.)  Plaintiff alleges that
7  defendants Bresler and Smith did not identify all of Plaintiff's spinal injuries in responding to
8  Plaintiff's second appeal.  (Pl.'s Decl. ¶¶ 17-20.)  Plaintiff alleges that defendant Barber
9  misinterpreted the orthopedic specialist's report and failed to follow the orthopedic specialist's
10 recommendations.  (Pl.'s Decl. ¶¶ 25-26.)

Plaintiff alleges that all defendants forced Plaintiff to be without pain medication, causing Plaintiff to endure chronic and substantial pain on a daily basis.  (Pl.'s Am. Compl. ¶ 3.) Plaintiff alleges that all defendants denied or delayed Plaintiff's requests for a renewal of his previously prescribed chronos, namely the 1-year eggcrate mattress chrono, and a bone scan of Plaintiff's right shoulder.  (Pl.'s Am. Compl. 5-7,  ¶¶ 4-6.)[2]

### C. **Failure to State a Claim**

#### 1. *Legal Standard*

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).  The federal system is one of notice pleading.  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which apply to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534

---

[2] Plaintiff referred to requests for a "bone scan" of his right shoulder.  In their first level decision to grievance No. PVSP-C-05-01182, defendants Bresler and Smith categorized a "bone scan" as an MRI request. (Doc. 12, Exh. C.)  For purposes of this order, Plaintiff's bone scan request is the equivalent of an MRI request.

U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusion are not. Id. at 1949.

Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Id. at 512. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001)) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'").

### 2. *Defendant Neubarth's Motion*

Defendant Neubarth argues that his motion to dismiss should be granted because 1) he is no longer employed by PVSP so no injunctive relief can be granted; 2) he is entitled to qualified immunity; and 3) Plaintiff has alleged no facts that support an Eighth Amendment violation either during defendant Neubarth's examination or because of defendant Neubarth's presence on the Chrono Committee that denied Plaintiff's chronos. (Doc. 43, Def. Neubarth's Mot. to Dismiss 5-10.)

In his opposition, Plaintiff contends that 1) defendant Neubarth may still be working at a California Department of Corrections and Rehabilitation ("CDCR") facility, and if Plaintiff should be transferred there, he will have need of an injunction; 2) defendant Neubarth is not

entitled to qualified immunity; and 3) Plaintiff's allegations are sufficient to state an Eighth Amendment claim. (Doc. 52, Pl.'s Opp'n to Defs.' Mot. to Dismiss 34-41.) The Court will address each argument as set forth below.

### a. Injunctive Relief

Defendant contends that because Neubarth is no longer an employee of PVSP, there is no case-or-controversy and thus Plaintiff's claim for injunctive relief is moot. (Def. Neubarth's Mot. to Dismiss 5-6.) Defendant refers to the Waiver of Service Returned Executed by the U.S. Marshals, which indicates that defendant Neubarth's former employment address is PVSP. (Doc. 35.) Plaintiff argues that an injunction may be necessary if Plaintiff is transferred to a facility in which defendant Neubarth is potentially working. (Pl.'s Opp'n 35-36.)

When an inmate seeks injunctive or declaratory relief concerning an institution at which he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Plaintiff has demonstrated no reasonable possibility that he will be incarcerated at a facility in which defendant Neubarth works at any predictable time in the future. See Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986) (finding that inmate who was transferred to another facility failed to show "reasonable expectation" or "demonstrated probability" of return to complained-of facility). Plaintiff's argument is too speculative.

The Court thus finds that Plaintiff's request for injunctive relief against Neubarth should be dismissed as moot.

### b. Qualified Immunity

Defendant Neubarth contends that he is entitled to qualified immunity. (Def. Neubarth's Mot. to Dismiss 6-7.) Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.

5

Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 813 (2009) ("Saucier procedure should not be regarded as an inflexible requirement"). The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Here, Plaintiff alleges that Neubarth's conduct violated Plaintiff's Eighth Amendment right which guarantees medical care without deliberate indifference to a serious medical need. Plaintiff contends that his injury occurred on September 2003, when Plaintiff slipped and fell on metal stairs, injuring himself. (Doc. 12, Pl.'s Decl. ¶ 1.) Plaintiff suffered a laceration, swelling and pain in his right knee and shoulder, and back injuries. (Doc. 12, Pl.'s Am. Compl. 8, ¶ 7.) On December 12, 2003, Plaintiff was scheduled for a follow-up appointment with defendant Dr. Neubarth. (Doc. 12, Pl.'s Decl. ¶ 3.) Plaintiff contends that at a previous appointment, Dr. Kushner had told Plaintiff if his injury persisted, he should request an MRI or X-ray for his back, knee, and right shoulder from the doctor at his next visit. (Doc. 12, Pl.'s Decl. ¶ 3.) Plaintiff made his requests, but defendant Neubarth denied them, despite Plaintiff's well-documented medical history. (Doc. 12, Pl.'s Decl. ¶ 1.) Plaintiff contends that he also requested a one-year renewal for low tier, low bunk and eggcrate mattress chronos because of Plaintiff's medical history, which defendant Neubarth denied. (Doc. 12, Pl.'s Decl. ¶ 1.) Plaintiff contends that he received a partial grant of his appeal at the first level, in which the Chrono Committee would review his chrono requests. (Doc. 12., Pl.'s Decl. ¶ 4.) The Chrono Committee denied Plaintiff's requests. (Doc. 12, Pl.'s Decl. ¶ 14.) Plaintiff alleges that defendant Neubarth's

presence on the Chrono Committee created a conflict of interest. (Doc. 12, Pl.'s Decl. ¶ 5.)

Based on these allegations, Plaintiff has stated a cognizable claim for an Eighth Amendment violation against defendant Neubarth. Plaintiff has alleged that defendant Neubarth knew of an excessive risk to Plaintiff's health and disregarded it: Neubarth knew of Plaintiff's previous medical history and through his actions exacerbated Plaintiff's pain. Plaintiff has satisfied the inquiry of whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier, 533 U.S. at 201.

The next inquiry is whether the right is sufficiently clear such that "a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Defendant Neubarth contends that a reasonable doctor would not have known that a difference of opinion is a constitutional violation. (Def. Neubarth's Mot. to Dismiss 9.) The Eighth Amendment's prohibition against cruel and unusual punishment clearly applies in the context of deliberate indifference to a serious medical need. The Court finds that the alleged facts, taken in the light most favorable to Plaintiff, indicate that Plaintiff has stated a cognizable claim. These are not mere differences in opinion that the Plaintiff alleges, but rather a knowing disregard of an excessive risk to Plaintiff's health. A challenge to the merits of a claim, as opposed to the pleading of a claim, is best done through a motion for summary judgment. See Swiekiewicz, 534 U.S. at 512.

Accordingly, the Court finds that Plaintiff has stated a cognizable Eighth Amendment claim against defendant Neubarth and that defendant Neubarth is not entitled to qualified immunity. Neubarth's motion to dismiss for failure to state a claim should be denied.

### D. **Failure to Exhaust Available Administrative Remedies**

#### *1. Legal Standard*

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available

administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Chruner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (Deering 2009). The process is initiated by submitting a CDC Form 602. Id. § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. § 3084.5. Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. §§ 3084.5, 3084.6(c). In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 85 (2006); McKinney, 311 F.3d at 1199-1201.

Plaintiff does not have to name each defendant in his grievance form. See Jones, 549 U.S. at 218-19 ("The level of detail necessary in a grievance to comply with the grievances procedures will vary from system to system and claim to claim, but it is the prison's

8

requirements, and not the PLRA, that define the boundaries of proper exhaustion . . . . [E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."). The inmate appeal form CDC-602 does not require identification of specific individuals. See Cal. Code Regs., tit. 15 § 3084.2(a).

### 2. *Analysis*

Defendants argue that Plaintiff has failed to exhaust any claims against Defendants Ortiz, Bresler, Smith, Barber, Kushner, Salazar, and Sacks. Defendants submit evidence that Plaintiff filed two grievances concerning medical issues, PVSP-C-04-00122 and PVSP-C-05-01182. (Docs. 44-2, Huckabay Decl., and 44-3, Grannis Decl.) Grievance No. PVSP-C-04-00122 was partially granted at the second level of review (Huckabay Decl. ¶ 4), and partially granted at the Director's level. (Doc. 44-3, Exh. A.) It concerned Plaintiff's complaint regarding medical care stemming from Plaintiff's injury on September 2003. (Doc. 44-2, Exh. A.) Grievance No. PVSP-C-05-01182 was denied at the second level of review and not appealed further. It also concerned Plaintiff's medical care. (Doc. 44-2, Exh. C.) Because grievance No. PVSP-C-05-01182 was not appealed to the Director's level, and no reason was given by Plaintiff as to why not, Plaintiff cannot rely on grievance No. PVSP-C-05-01182 to demonstrate exhaustion of any of Plaintiff's claims. Thus, Plaintiff's only exhausted claims are those which were raised in Grievance No. PVSP-C-04-00122.

In his opposition, Plaintiff submits evidence in support of his arguments against each Defendant. The Court will examine each argument as it pertains to each defendant.

**A.   Defendant Ortiz**

Defendants contend that the two grievances concerning medical issues fail to exhaust any claims against defendant Ortiz. (Doc. 44, Defs.' Ortiz, Barber, Smith, and Bresler's Mot. to Dismiss 7-8.) Defendants contend that grievance No. PVSP-C-04-00122 did not concern defendant Ortiz's alleged interference with Plaintiff's Neurontin prescription and thus did not exhaust the claim. (Doc. 44, Defs.' Mot. to Dismiss 7.) Defendants contend that the grievance failed to exhaust administrative remedies as to defendant Ortiz because Ortiz's alleged conduct occurred well after Plaintiff had filed the grievance and that Plaintiff should have filed a separate

9

appeal. (Doc. 44, Defs.' Mot. to Dismiss 7.)

In his opposition, Plaintiff alleges that he had an appointment with defendant Ortiz on January 26, 2004. (Doc. 52, Exh. A, Pl.'s Decl. ¶ 9.) Plaintiff alleges that he showed defendant Ortiz grievance No. PVSP-C-04-00122. (Doc. 52, Exh. A, Pl.'s Decl. ¶ 9.) Plaintiff alleges that he made a request for his low bunk/low tier chrono, an extra mattress chrono, and an MRI or X-ray, but Ortiz denied them. (Doc. 52, Exh. A, Pl.'s Decl. ¶ 9.) Plaintiff argues that it would be wasteful to have to file separate grievances against each doctor for every complaint he had in this matter. (Pl.'s Opp'n 19-20; Doc. 52, Exh. A, Pl.'s Decl. 4-5.) Plaintiff submits as evidence his appeals to the second and Director level. In these appeals, Plaintiff mentioned defendant Ortiz's alleged conduct of failing to order an MRI for Plaintiff's knee, shoulder, and back (Doc. 52, Exh. E) and interrupting and interfering with Plaintiff's Neurontin medication. (Doc. 52, Exh. F.) Plaintiff alleges in his amended complaint only that defendant Ortiz interfered with Plaintiff's Neurontin medication, and that all defendants violated his constitutional rights by denying renewal of Plaintiff's 1-year eggcrate mattress chrono and his request for a bone scan of his right shoulder. (Doc. 12, Pl.'s Decl. ¶ 6; Pl.'s Am. Compl. 6-7, ¶¶ 4-6.) Plaintiff also alleges that all defendants denied Plaintiff's request for pain medication. (Pl.'s Am. Compl. 5, ¶ 3.) The Court will only consider those claims alleged in Plaintiff's amended complaint.

In Grievance PVSP-C-04-00122, filed December 30, 2003, Plaintiff grieved a denial of Plaintiff's low bunk, low tier and eggcrate mattress chronos, failure to order an MRI for Plaintiff's low back, knees, and right shoulder for injuries stemming from the September 2003 fall, and failure to order a specialist to analyze the MRI tests. (Doc. 44-2, Exh. A.) On appeal to the Director's level, Plaintiff included allegations that defendant Ortiz allegedly interfered with Plaintiff's Neurontin prescription on March 24, 2004. (Doc. 12, Exh. B.) The Director's level considered "all submitted documentation and supporting argument of the parties." (Doc. 12, Exh. B.) Despite the statement, the Director's level decision discussed only the problems raised by Plaintiff at the first level of review. The Court cannot find that prison officials actually considered Plaintiff's claims regarding defendant Ortiz's alleged interference with Plaintiff's Neurontin prescription. Therefore, Plaintiff did not properly exhaust this claim using grievance

No. PVS-C-04-00122.

Plaintiff also alleges that all defendants violated his constitutional rights by denying renewal of Plaintiff's 1-year eggcrate mattress chrono and his request for a bone scan of his right shoulder. (Pl.'s Am. Compl. 6-7, ¶¶ 4-6.) Plaintiff also alleges that all defendants denied Plaintiff's request for pain medication. (Pl.'s Am. Compl. 5, ¶ 3.) The issue then is whether Plaintiff has exhausted these claims for defendant Ortiz. In grievance No. PVSP-C-04-00122, Plaintiff grieved, *inter alia*, the denial of his 1-year eggcrate mattress chrono and an MRI for his right shoulder. (Doc. 52, Exh. D; Doc. 12, Exh. B.) These claims were considered at the Director's level. (Doc. 52, Exh. G.) As stated previously, all an inmate is required to provide on the grievance form is a description of the problem and the action requested, and there is no requirement for naming of individuals. Cal. Code Regs., tit. 15 § 3084.2(a). Plaintiff described this problem and the action requested in grievance No. PVSP-C-04-00122, as required by prison regulation. Though defendant Ortiz's alleged actions occurred after defendant Neubarth's alleged actions, defendant Ortiz's alleged conduct is a continuation of the same problem Plaintiff grieved in grievance No. PVSP-C-04-00122. The Court finds that Plaintiff's claims for the denial of 1-year eggcrate mattress chrono and request for a bone scan of his right shoulder were exhausted, and therefore exhausted against defendant Ortiz. Plaintiff's allegation regarding his pain medication was not exhausted, since it was not considered in grievance No. PVSP-C-04-00122.[3]

For the above reasons, Plaintiff has failed to properly exhaust his administrative remedies with regards to defendant Ortiz's interference with Plaintiff's Neurontin prescription. Plaintiff however has properly exhausted his claims that defendant Ortiz denied Plaintiff's request for a renewal of his 1-year eggcrate mattress chrono and a bone scan of his right shoulder.

### B. Defendant Salazar

Defendants argue that grievance No. PVSP-C-04-00122 was filed before defendant Salazar's alleged actions and thus cannot be used for exhaustion purposes. (Doc. 49, Defs.'

---

[3] Plaintiff's allegation that all defendants denied him pain medication was not considered in grievance No. PVSP-C-04-00122, and thus was not exhausted against all defendants.

Kushner, Salazar, and Sacks's Mot. to Dismiss 8-9.) Defendant Salazar allegedly reviewed Plaintiff's first level appeal on February 17, 2004 and failed to recommend a MRI for Plaintiff's low back, and allegedly interfered with Plaintiff's Neurontin prescription on May 28, 2004. (Doc. 49, Defs.' Mot. to Dismiss 8). Defendants also contend that Plaintiff should have filed a separate grievance against defendant Salazar in order to properly exhaust. (Doc. 49, Defs.' Mot. to Dismiss 8-9.)

In his opposition, Plaintiff contends that Salazar was involved in Plaintiff's first level response, interrupted Plaintiff's Neurontin prescription, failed to provide an adequate alternative, and failed to list a request for a MRI of Plaintiff's low back. (Pl.'s Opp'n 20-21.) Plaintiff contends that Salazar's inaction furthered Plaintiff's injury. (Doc. 52, Exh. E.)

Defendant Salazar's alleged conduct according to Plaintiff's amended complaint was denial of Plaintiff's Neurontin prescription and omission of a recommendation for low back MRI. (Doc. 12, Pl.'s Decl. ¶¶ 4, 6.) Plaintiff also alleged that defendant Salazar had submitted requests to the Chrono Committee for 1-year renewals of low bunk, low tier, and eggcrate mattress chronos, and for referral to an orthopedic specialist. (Doc. 12, Pl.'s Decl. ¶ 4.) Plaintiff also alleged that all defendants had denied Plaintiff's request for 1-year eggcrate mattress chrono and a bone scan of Plaintiff's right shoulder. (Pl.'s Am. Compl. 6-7, ¶¶ 4-6.)

The claim regarding omission of a recommendation for a low back MRI was raised for the first time on appeal to the second level, and the claim of interference with the Neurontin prescription was raised on appeal to the Director's level. (Doc. 52, Exh. E.) The second level and Director's level decisions failed to discuss any of Plaintiff's additional claims. (Doc. 52, Exhs. F and G.) The Court cannot find that these claims were considered by prison officials, and thus these claims were not properly exhausted with grievance No. PVSP-C-04-00122.

Plaintiff had also alleged that all defendants violated his constitutional rights by denying renewal of Plaintiff's 1-year eggcrate mattress chrono and his request for a bone scan of his right shoulder. (Pl.'s Am. Compl. 6-7, ¶¶ 4-6.) As previously stated regarding defendant Ortiz, these two claims were fully exhausted, and thus exhausted against defendant Salazar.

Accordingly, Plaintiff has failed to properly exhaust his administrative remedies as to

1 defendant Salazar's omission of a recommendation for a low back MRI and interference with
2 Plaintiff's Neurontin prescription. Plaintiff has properly exhausted his administrative remedies
3 as to denial of Plaintiff's 1-year eggcrate mattress chrono and bone scan of his right shoulder.

        **C.**       **Defendant Sacks**

5       Defendants contend that grievance No. PVSP-C-04-00122 does not concern defendant
6 Sacks. (Doc. 49, Mot. to Dismiss 9-10.) Defendant Sacks's alleged action occurred on March
7 30, 2004, when Sacks responded to Plaintiff's second level appeal. (Doc. 49, Mot. to Dismiss 9-
8 10.) Defendants contend that Plaintiff should have filed a grievance against defendant Sacks
9 then and his failure to do so resulted in Plaintiff's failure to exhaust administrative remedies
10 against him. (Doc. 49, Mot. to Dismiss 9-10.)

11       In his opposition, Plaintiff contends that defendant Sacks was aware of Plaintiff's
12 grievance by being involved at the first and second level review. (Doc. 52, Exhs. E & F.)
13 Plaintiff contends that Sacks's failure to properly remedy Plaintiff's grievance led to further
14 injury to Plaintiff.

15       The only allegation against defendant Sacks is that he, like the other defendants, denied
16 Plaintiff his 1-year eggcrate mattress chrono and his request for a bone scan of his right shoulder.
17 (Pl.'s Am. Compl. 6-7, ¶¶ 4-6.) As previously stated, these two claims were fully exhausted and
18 thus exhausted against defendant Sacks. Accordingly, Plaintiff has exhausted administrative
19 remedies as to the denial of Plaintiff's 1-year eggcrate mattress chrono and bone scan of his right
20 shoulder.

        **D.**       **Defendant Kushner**

22       Defendants argue that Grievance PVSP-C-04-00122 was filed before defendant
23 Kushner's alleged actions and thus cannot be relied on for exhaustion purposes. (Doc. 49, Mot.
24 to Dismiss 7-8.) On February 15, 2005, defendant Kushner allegedly treated Plaintiff. (Doc. 49,
25 Defs.' Mot. to Dismiss 7.) Defendants contend that this alleged action arose well after Plaintiff's
26 first grievance was filed and thus cannot be used to exhaust administrative remedies. (Doc. 49,
27 Defs.' Mot. to Dismiss 7.) Defendants contend that Plaintiff had the opportunity to exhaust his
28 claims against defendant Kushner with grievance No. PVSP-C-05-01182, but failed to appeal the

grievance past the second level. ((Doc. 49, Defs.' Mot. to Dismiss 8.)

Plaintiff contends that defendant Kushner's alleged actions violate the Director Level's order regarding grievance No. PVSP-C-04-00122. (Doc. 52, Pl.'s Opp'n 27.) Plaintiff contends that he showed defendant Kushner the Director's level order as well as other materials in order to convince Kushner to order 1) treatment as recommended by Dr. Tanji and requested by Plaintiff, including a bone scan of Plaintiff's right shoulder and pain management specialist, 2) an eggcrate mattress chrono and 3) adequate medical prescription. (Doc. 52, Pl.'s Opp'n 26.) Plaintiff contends that Kushner's alleged actions would thus fall within the scope of Grievance PVSP-C-04-00122. (Doc. 52, Pl.'s Opp'n 25-27; Exh. A, at 5-6.)

In the amended complaint, Plaintiff's allegations against defendant Kushner include: (1) denied Plaintiff's request for adequate pain prescription (namely Celebrex), (2) denied Plaintiff's request for a pain management specialist, (3) falsely reported that Plaintiff refused treatment, (4) conducted an inadequate physical examination, (5) denied 1-year eggcrate mattress chrono, and (6) denied bone scan of right shoulder. (Doc. 12, Pl.'s Decl. ¶¶ 12-14.)

Grievance No. PVSP-C-04-00122 was exhausted, and thus all the claims properly raised therein were exhausted, including, *inter alia*, Plaintiff's request for 1-year eggcrate mattress chrono and the bone scan of Plaintiff's right shoulder. Plaintiff's other allegations against defendant Kushner, namely the denial of a pain management specialist, adequate pain prescriptions, false reporting of Plaintiff's refusal of treatment, and inadequate physical exam, were raised only in grievance No. PVSP-C-05-01182. Grievance No. PVSP-C-05-01182 was not exhausted, and thus those claims were not exhausted.

Accordingly, Plaintiff failed to properly exhaust his administrative remedies against defendant Kushner for the following claims: denial of Plaintiff's request for adequate pain prescription, denial of Plaintiff's request for a pain management specialist, falsely reporting that Plaintiff refused treatment, and conducting an inadequate physical examination. Plaintiff did properly exhaust his administrative remedies for the following claims against defendant Kushner: denial of 1-year eggcrate mattress chrono, and denial of bone scan of right shoulder.

//

### E. Defendants Bresler Smith, and Barber

With regards to defendants Bresler, Smith, and Barber, Defendants contend that grievance No. PVSP-C-04-00122 was filed before any alleged actions by them, and thus it cannot be used to satisfy exhaustion requirements. (Doc. 44, Mot. to Dismiss 8-9.) Bresler's alleged conduct occurred on March 29, 2005 (interview for first level review) and April 18, 2005 (first level appeal decision); Smith's alleged conduct occurred on April 18, 2005 (first level appeal decision); and Barber's alleged conduct occurred on June 24, 2005 (second level appeal decision). (Doc. 44, Mot. to Dismiss 8.) All of these alleged actions arose from reviewing Plaintiff's second grievance, grievance No. PVSP-C-05-01182, filed March 4, 2005.

In his opposition, Plaintiff argues that the three defendants are encompassed in grievance No. PVSP-C-04-00122. (Doc. 52, Pl.'s Opp'n 28.) Defendants Bresler, Smith, and Barber were responsible for reviewing Plaintiff's second grievance. Plaintiff contends, however, that his first inmate grievance put PVSP personnel on notice of Plaintiff's grievance regarding inadequate medical treatment subsequent to Plaintiff's September 2003 fall. (Doc. 52, Pl.'s Opp'n 34; Exh. A.)

In Plaintiff's amended complaint, Plaintiff alleges that: defendant Bresler ignored Plaintiff's complaints regarding defendant Kushner's treatment; defendants Bresler and Smith failed to identify all of Plaintiff's spinal injuries in their first level response to grievance No. PVSP-C-05-01182; defendants Bresler and Smith failed to address defendant Kushner's denial of pain medication and inadequate treatment; and defendant Barber's second level response misinterpreted Dr. Tanji's recommendations in denying the 1-year eggcrate mattress chrono, bone scan of Plaintiff's right shoulder, pain management specialist, and pain medication. (Doc. 12, Pl.'s Decl. ¶¶ 15-26.) Plaintiff had also alleged that all defendants denied Plaintiff's request for 1-year eggcrate mattress chrono and bone scan of Plaintiff's right shoulder. (Pl.'s Am. Compl. 6-7, ¶¶ 4-6.)

Plaintiff's claims that were raised and properly exhausted in grievance No. PVSP-C-04-00122 were the denial of the 1-year eggcrate mattress chrono and the the bone scan of Plaintiff's right shoulder. As stated previously, these claims were exhausted, and thus exhausted against

defendants Bresler, Smith, and Barber. Plaintiff's claims that were raised for the first time in grievance No. PVSP-C-05-01182 however were not exhausted.

Accordingly, Plaintiff fails to exhaust administrative remedies for the following claims: defendant Bresler ignoring Plaintiff's complaints regarding defendant Kushner's treatment; defendants Bresler and Smith failing to identify all of Plaintiff's spinal injuries in their first level response to grievance No. PVSP-C-05-01182; defendants Bresler and Smith failing to address defendant Kushner's denial of pain medication and inadequate treatment; and defendant Barber denying the requested pain management specialist and pain medication. Plaintiff however has exhausted administrative remedies as to defendants Bresler, Smith, and Barber's denial of Plaintiff's requests for 1-year eggcrate mattress chrono and bone scan of Plaintiff's right shoulder.

## II.     Conclusion and Recommendation

Accordingly, the Court HEREBY RECOMMENDS that:

1. Defendant Neubarth's motion to dismiss for failure to state a claim, filed on August 22, 2008, be GRANTED in part with regards to injunctive relief and DENIED in part with regards to qualified immunity;

2. Defendants Ortiz, Bresler, Smith, and Barber's motion to dismiss for failure to exhaust administrative remedies, filed on August 22, 2008, be GRANTED in part and DENIED in part as stated herein; and

3. Defendants Kushner, Salazar, and Sacks's motion to dismiss for failure to exhaust administrative remedies, filed on September 18, 2008, be GRANTED in part and DENIED in part as stated herein.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 16, 2009**          **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE