# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY VICTORY,<br><br>               Plaintiff,<br><br>   v.<br><br>C. BARBER, et al.,<br><br>               Defendants. | CASE NO. 1:05-CV-01578-LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(DOC. 111)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE (21) DAYS |

**Findings And Recommendation**

**I.    Background**

Plaintiff Michael Anthony Victory ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's first amended complaint against Defendants Barber, Smith, Kushner, Bresler, Salazar, Sacks, Neubarth, and Ortiz for violation of the Eighth Amendment. Pending before the Court is Defendants' motion for summary judgment, filed December 22, 2010. Defs.' Mot. Summ. J., Doc. 111. Plaintiff filed his opposition on February 4, 2011.[1] Pl.'s Opp'n, Doc. 121. Defendants filed their reply on February 18, 2011. Defs.' Reply, Doc. 126. The matter is submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on April 21, 2008, and January 10, 2011. Doc. 21, Second Informational Order; Doc. 114, Order; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).

1

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[2] Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

---

[2] The Federal Rules of Civil Procedure were updated effective December 1, 2010.

2

suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

///

///

3

III.     **Statement of Facts**[3]

At all times relevant to this matter, Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP"). From June 2005 through September 2005, Defendant Barber was the Acting Chief Medical Officer at PVSP.[4] At all times relevant, Defendants Neubarth, Kushner, Ortiz, and Salazar were employed as physicians/surgeons at PVSP. At all times relevant, Defendant Sacks was the Chief Medical Officer at PVSP. At all times relevant, Defendant Bresler was employed as Acting Chief Physician and Surgeon at PVSP. At all times relevant, Defendant Smith was employed as the Acting Chief Dental Officer at PVSP. Defendant Barber's involvement with Plaintiff's care was limited to reviewing his inmate appeal at the second level.

Dr. Nicholes issued a chrono allowing Plaintiff to possess an egg crate mattress from December 26, 2002 until December, 26, 2003. On December 12, 2003, Defendant Neubarth examined Plaintiff after he complained of pain in his back, knee, and shoulder. Defendant Neubarth observed that Plaintiff's shoulder had a one centimeter area of swelling on the lower border of his scapula (shoulder blade). Defendant Neubarth diagnosed Plaintiff has having a possible muscle or ligament pull or tear at the base of Plaintiff's right scapula. Defendant Neubarth contends that he did not observe any looseness or swelling in Plaintiff's knee consistent

---

[3] All facts are taken from Defendants' statement of undisputed facts and are considered undisputed, unless otherwise noted as a contention. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff submits his admissions or denials of Defendants' statement of facts. Plaintiff's verified complaint may be treated as an opposing affidavit to the extent that it is verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). Plaintiff's opposition is not verified and may not be treated as an opposing affidavit. The Court has read and considered all of the parties' arguments, even if the arguments are not mentioned herein. The Court will list the facts and evidence that are relevant to resolving Defendants' motion for summary judgment.

[4] Plaintiff lists several facts with which he denies without citation to any evidence. That is insufficient to deny Defendants' statement of facts, as Defendants do cite to evidence in support. All such denials by Plaintiff are overruled.

4

with trauma or disease of the knee.[5] Plaintiff contends that he had large protrusions under his knees and had pain in his knees. Defendant Neubarth contends that he advised Plaintiff to avoid movements that caused pain.[6] Plaintiff contends that Defendant Neubarth merely advised him to be more careful.

Defendant Neubarth prescribed ibuprofen, an anti-inflammatory medicine, to treat the pain and swelling in Plaintiff's shoulder.[7] Defendant Neubarth also prescribed methocarbamol, a muscle relaxer to ease Plaintiff's degenerative disc disease symptoms. Defendant Neubarth renewed Plaintiff's low-bunk chrono, but declined to renew Plaintiff's lower-tier cell chrono.[8] Lower-tier cell chronos are ordinarily reserved for inmates who are physically unable to climb stairs or inmates who cannot climb stairs without seriously risking their health or safety.[9] Plaintiff did not need a lower-tier cell chrono because he had no medical conditions that precluded him from climbing stairs without serious risk to his health or safety.[10]

---

[5] Plaintiff contends that there were clearly large protrusions extending outward under both knees, previously diagnosed as "Osgood Schlatter disease." Plaintiff cites to his declaration as well as various exhibits in his amended complaint. Plaintiff cannot testify as to whether he did have Osgood Schlatter disease, as he is not qualified as an expert in the medical field. See Fed. R. Evid. 702. Evidence from other, non-party doctors is hearsay, and hearsay is generally inadmissible. Fed. R. Evid. 801, 802. However, Plaintiff can testify as to his own personal, layperson observations of the condition of his knees. Plaintiff's denial is sustained in part, and the statement of facts is modified accordingly.

[6] Plaintiff contends that Defendant Neubarth advised him only to be more careful. The denial is sustained, and the statement of facts is modified accordingly.

[7] Plaintiff denies that these medications are used for the purpose stated by Defendants. Plaintiff's denial is overruled, as he cites to no evidence in support. Defendants' statement of fact is supported, as Defendant Neubarth has sufficiently demonstrated his qualifications in the medical field to provide such opinion.

[8] Plaintiff contends that Defendant Neubarth also declined to renew Plaintiff's egg crate/double mattress chrono. Plaintiff is not denying Defendants' statement that he did not renew Plaintiff's lower-tier cell chrono. Thus, Plaintiff's denial is overruled. Plaintiff's dispute regarding the egg crate/double mattress chrono will be addressed later.

[9] Plaintiff contends that low-tier chronos are not ordinarily reserved for inmates who are physically unable to climb stairs, or who cannot climb stairs without serious risk. Plaintiff contends that Defendant Kushner had denied Plaintiff's low tier chrono because he was not yet fifty years old. The reasons provided by Defendants Barber and Neubarth are not an exclusive list for receiving a lower-tier chrono. Plaintiff has presented insufficient evidence to dispute Defendants' statement of fact, and the denial is overruled.

[10] Plaintiff contends that he was diagnosed with Osgood Schlatter disease, which causes him pain in both knees, and that his back can "pull-out" unpredictably. It is unclear who diagnosed Plaintiff with Osgood Schlatter disease. Plaintiff cites to Plaintiff's Exhibit B, which appears to include notes by Defendant Salazar. Defendant Salazar mentions that Plaintiff contends that he has Osgood Schlatter disease. Defendant Salazar does not state that

5

On December 30, 2003, Plaintiff filed an inmate appeal claiming that Dr. Neubarth denied him an MRI on his shoulder, lower back, and knees, and declined to renew Plaintiff's chrono for an egg crate mattress or lower-tier cell; Plaintiff requested an MRI for his shoulder, back, and knees, and an egg crate mattress.

In February 2004, Defendants Salazar and Sacks reviewed Plaintiff's appeal and partially granted Plaintiff's appeal by granting him a renewal of his chrono for an egg crate mattress, and referred Plaintiff to an orthopedic specialist to determine if an MRI was necessary. In March 2004, Defendant Sacks denied Plaintiff an automatic renewal of his chrono for an egg crate mattress and referred Plaintiff to an orthopedic specialist to determine if an MRI was necessary.

An MRI of the shoulder is generally only necessary when there is a muscle tear involving the rotator cuff and surgery is necessary to correct the injury. Surgery is not necessary for all shoulder muscle or ligament tears. Surgery is ordinarily only necessary if the injury is so severe that rest and non-surgical treatment would not be effective. Defendant Neubarth did not recommend or prescribe an MRI because his clinical diagnosis of Plaintiff through physical observation of his shoulder, back, and knee was sufficient to properly diagnose Plaintiff's injury.[11] Plaintiff's symptoms and diagnosis did not warrant an MRI of his shoulder because Defendant Neubarth did not observe any trauma to his rotator cuff and surgery was not necessary

---

Plaintiff has the disease. Plaintiff cites to insufficient evidence to deny Defendant's claims, and thus his denials are overruled.

Plaintiff also contends that he has numerous previous chronos which assigned him a lower tier, citing to chronos attached in his amended complaint. *See* Am. Compl., Ex. I, Doc. 12. The chronos cited by Plaintiff indicate that Plaintiff had received chronos recommending that he not work at jobs that required prolonged walking, climbing of ladders, or many flights of stairs, and to not lift a lot of weight. Plaintiff further contends that Dr. Nicholes had granted Plaintiff a low-bunk and low-tier chrono for one year. The evidence from Dr. Nicholes is hearsay, and is inadmissible here. Additionally, the chronos do not preclude Defendants' finding that Plaintiff did not have a medical condition that precluded Plaintiff from climbing stairs. Plaintiff's denial is overruled.

[11] Plaintiff denies that Defendant Neubarth conducted a sufficient and proper observation and diagnosis of Plaintiff's injuries and chronic conditions. Plaintiff is contesting the adequacy of any physical observation, stating that no physical exam was performed, only a limited, cursory visual and verbal assessment. However, Defendant Neubarth is not describing what diagnosis he did, only that he did a diagnosis and concluded through physical observation that Plaintiff did not need a MRI. Plaintiff has not sufficiently denied Defendant Neubarth's contention, and the denial is overruled.

for this type of injury.[12] Nothing in Plaintiff's medical history indicated that he suffered trauma that indicated he would require shoulder surgery.

Care that includes rest and avoiding movement that causes pain in the injured location combined with anti-inflammatory medication over a period of several months is appropriate for strains or tears of shoulder muscles and ligaments; this treatment is consistent with the ordinary standard of care in the community.[13] Plaintiff did not need an MRI for his knee or back because Plaintiff did not exhibit symptoms indicating a severe injury warranting surgery.[14] Nothing in Plaintiff's medical history indicated that he has suffered any harm or injury to his shoulder, knee, or back as a result of not receiving an MRI.[15] Defendant Neubarth never suspected that his diagnosis or prescribed course of treatment for Plaintiff would cause him harm.[16] Plaintiff contends that he informed Defendant Neubarth that the pain medication he received was inadequate. Defendant Neubarth never intended to harm or injure Plaintiff.[17]

Plaintiff received an x-ray of his right knee on April 19, 2004. The x-ray indicated that

---

[12] Plaintiff denies that Defendant Neubarth did a proper diagnosis. This denial is overruled. Plaintiff cannot testify as to whether a diagnosis was proper as that would require medical expertise, and Plaintiff is not qualified to provide such expertise. Fed. R. Evid. 702.

[13] Plaintiff contends that prescribing an extra mattress and pillow are common items utilized in the "community" to alleviate pressure points, and reduce pain and additional pain/swelling. If Plaintiff is referring to the medical community, Plaintiff is not qualified to provide such testimony. Plaintiff's denial is overruled.

[14] Plaintiff contends that his symptoms did warrant surgery, citing in support Exhibit C, which appears to be an operative report allegedly authored by Marshall Lewis, M.D. of Tehachapi Surgery Center. This is inadmissible hearsay, and cannot be used to deny Defendants' statement of fact. Plaintiff's denial is overruled.

[15] Plaintiff contends that he did suffer severe pain and loss of sleep as a result of not receiving a timely MRI. That is insufficient to deny Defendants' statement, as Defendants indicate that there is nothing in Plaintiff's *medical history* which would indicate this.

[16] Plaintiff contends that he informed Defendant Neubarth that the pain medication that he was receiving was inadequate. Pl.'s Opp'n, Attach. 2, Pl.'s First Decl. ¶¶ 1, 6; Pl.'s Second Decl. ¶ 8. Plaintiff's second declaration indicates that he informed Defendant Neubarth that he wanted an increase in pain medication, and that Defendant Neubarth would only renew Plaintiff's current prescription. The statement of facts is modified accordingly.

[17] Plaintiff contends that Defendant Neubarth was rude, abrasive, and unprofessional during an interview with Plaintiff. This is not indicative of an intent to cause harm, and Plaintiff's denial is overruled.

Plaintiff's knee was normal.[18] Plaintiff contends that he has a growth under both his knees which causes him weakness and pain. Plaintiff received an x-ray of his lower back on April 19, 2004. The x-ray confirmed that Plaintiff had degenerative disc disease impacting his lumbosacral spine (lower back). Plaintiff received an x-ray of his right shoulder on February 11, 2004. The x-ray indicated that Plaintiff's shoulder was normal.

Following a telemedicine examination of Plaintiff on August 11, 2004, Dr. Tanji diagnosed Plaintiff as having degenerative disk disease, and recommended that Plaintiff have an MRI of his back. Plaintiff received an MRI of his lower back on November 9, 2004. The MRI radiology report confirmed what the April x-ray already showed: that Plaintiff had degenerative disc disease, and had 4 and 6 millimeter posterior disc protrusion but no spinal stenosis (narrowing of the spinal canal). The MRI radiology report did not correlate with Plaintiff's complaints of severe lower back pain.[19]

Dr. Tanji recommended an egg crate mattress for comfort for Plaintiff's back. Osteoarthritis, also known as degenerative disc disease, is an arthritis associated with aging that can affect any joint, including the spine. Standard treatment involves pain management through anti-inflammatory medication, some of which are available over the counter (ibuprofen).[20] Moderate exercise is also recommended to strengthen muscles around those parts of the body prone to weight-bearing. Plaintiff's medical records show that his osteoarthritis was regularly treated with anti-inflammatory medication and methocarbamol, a

---

[18] Plaintiff denies that his right knee was normal, contending a growth under both knees. As Plaintiff is competent to testify as to his own personal observations, the statement of fact is modified accordingly. Again, Plaintiff presents insufficient evidence to support his contention that he has Osgood Schlatter disease, and that denial is overruled.

[19] Plaintiff contends that the MRI does correlate, as Plaintiff was prescribed various increases in pain medication to adequately treat his pain. Again, Plaintiff cites to inadmissible hearsay. Additionally, it appears to cite to Plaintiff's pain prescriptions from 2007 through 2009, which are beyond the scope of this action. Plaintiff's denial is overruled.

[20] Plaintiff denies that anti-inflammatory medication is standard treatment for osteoarthritis. Plaintiff cites to his declaration, which cannot be used as competent evidence because Plaintiff is not qualified to provide medical expert opinion testimony. Fed. R. Evid. 702. Plaintiff also cites to inadmissible hearsay. *Id.* 801, 802. Plaintiff's denial is thus overruled.

8

muscle relaxer, consistent with the ordinary standard of care.[21]

Eggcrate mattresses are generally only medically necessary for patients who have skin breakdown or who are at high risk for skin breakdown, e.g., paraplegics.[22] Nothing in Plaintiff's medical records indicates that he suffered skin breakdown. Nothing in Plaintiff's medical records indicates that Plaintiff was ever diagnosed with a medical condition that placed him at risk for skin breakdown. Plaintiff's medical condition did not medically necessitate an egg crate mattress.[23]

Following a telemedicine examination in August 2004, Dr. Tanji, an orthopedic specialist, observed a small lump on Plaintiff's right shoulder, and diagnosed Plaintiff as having a cyst, which was "most likely benign."[24] Dr. Tanji observed that Plaintiff's shoulder x-rays were within normal limits. Dr. Tanji recommended that Plaintiff receive a bone scan of his right shoulder to reassure Plaintiff that the cyst in his shoulder was not cancerous.

Plaintiff filed a medical appeal, PVSP Appeal Log No. 05-1182, requesting a bone scan of his right shoulder and an egg crate mattress on March 4, 2005. Defendants Bresler and Smith denied Plaintiff's request for a bone scan and egg crate mattress at the first level. Defendant Barber denied Plaintiff's appeal at the second level of review. Defendant Barber denied Plaintiff's appeal because Plaintiff's medical condition did not necessitate an egg crate mattress or a bone scan of his right shoulder.

Plaintiff was eventually diagnosed with a lipoma on his right shoulder in February 2007.

---

[21] Plaintiff denies that his osteoarthritis was regularly treated with anti-inflammatory medication and muscle relaxers, contending that the medication was ineffective. Again, Plaintiff cannot provide medical expert opinion, and Plaintiff's citation to other doctors' prescriptions is inadmissible hearsay. Plaintiff's denial is overruled.

[22] Plaintiff contends that Defendants' policy substituted an eggcrate mattress for an extra/double mattress. Plaintiff cites to insufficient evidence challenging Defendants' assertion that the policy regarding eggcrate mattresses is usually for inmates with skin breakdowns. Plaintiff's denial is overruled.

[23] Plaintiff denies this statement. However, Plaintiff relies on his own declaration, which cannot be used as competent evidence because Plaintiff is not qualified to provide medical expert opinion testimony. Fed. R. Evid. 702. Plaintiff also cites to inadmissible hearsay. *Id.* 801, 802. Plaintiff's denial is overruled.

[24] Plaintiff contends that the exam was not performed in August 2004, citing to Defendants' Exhibit 17-1. Defendants' Exhibit indicates that Plaintiff's consultation was not fully completed. However, for purposes of examining Plaintiff's right shoulder, the statement of fact is accurate. Plaintiff's denial is overruled.

9

1  A lipoma is a tumor-like growth of fat below the skin; lipomas are harmless or benign (not
2  cancerous), and generally painless.  Plaintiff contends that his lipoma was not painless.  A bone
3  scan is not necessary to detect a lipoma because they can be clinically diagnosed through simple
4  observation.

Surgically removing a lipoma is ordinarily unnecessary unless it is located in an area
that impinges movement.[25]  Plaintiff contends that he had pain when he raised his right arm, and
when he slept.  In the instances where a lipoma is removed, a sample is routinely sent to a
pathologist for confirmation of the diagnosis.  Nothing in Plaintiff's medical history suggested he
was at significant risk of developing cancer.[26]  A bone scan was not necessary for Plaintiff's
shoulder because his shoulder x-ray was normal and Dr. Tanji indicated that the "cyst" on his
shoulder appeared benign; in other words, nothing clinically indicated that Plaintiff's cyst was
cancerous or required further evaluation.  Reassuring a patient that a cyst is not
cancer—particularly when there is no clinical indication of cancer—does not make a bone scan
necessary.

Dr. Henry confirmed that Plaintiff had a lipoma in March 2007.  Dr. Henry recommended
a routine surgical excision of Plaintiff's lipoma in March 2007.  Dr. Henry surgically removed
the lipoma from Plaintiff's right shoulder on June 18, 2007.  Lab results confirmed the diagnosis
of a benign lipoma.[27]

## IV. Analysis

### A. Deliberate Indifference To Serious Medical Need

The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does
not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

---

[25] Plaintiff contends that his lipoma impinged his movement.  Such an opinion requires medical expertise.  Thus, the Court will modify the statement of fact only to the extent that it reflects Plaintiff's personal observation of his movements and pain.

[26] Plaintiff contends that there was something in Plaintiff's medical history to suggest he was at risk of developing cancer, citing to Defendants' Exhibit 17-3, which are documents pertaining to Plaintiff's medical record.  Plaintiff cites to no specific document that indicates Plaintiff was at risk of cancer.  Plaintiff's denial is overruled.

[27] Plaintiff lists additional undisputed facts.  The only fact that is admissible concerns whether Plaintiff received an eggcrate mattress chrono in January 13, 2003.

citation omitted). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

**B.    Denial of Eggcrate Mattress Chronos**

Defendants contend that the denial of the eggcrate mattress chrono was not deliberately indifferent. Defs.' Mem. P. & A. 4:22-5:11. Defendants contend that Plaintiff did not need an egg crate mattress because such treatment was not medically necessary to preserve Plaintiff's health. *Id.* Defendants contend that Plaintiff's treating physicians provided a course of treatment for Plaintiff's osteoarthritis consistent with ordinary standard of care. *Id.*

Plaintiff contends that Defendants should have provided him with an extra mattress. Pl.'s Opp'n 8:26-9:21. Plaintiff contends that Defendants knew of Plaintiff's low back pain, and that Defendants' removal of the eggcrate mattress would cause Plaintiff further pain when he slept. *Id.*

Defendants have presented sufficient evidence that they treated Plaintiff's medical conditions by means other than providing an eggcrate mattress. Defendants provided Plaintiff

with anti-inflammatory drugs for his pain, and methocarbamol, a muscle relaxant. Even if other doctors had provided Plaintiff with an eggcrate mattress, that would amount at most to a difference in medical opinion. To establish that a difference of medical opinion rises to the level of deliberate indifference, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Defendants have presented evidence that the course of treatment they chose was medically acceptable. Plaintiff has presented insufficient evidence that Defendants' treatment was medically unacceptable, or that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. There is no genuine dispute of material fact. Having construed the facts in the light most favorable to the non-moving party, the Court finds that summary judgment should be granted in favor of Defendants for the denial of the eggcrate mattress chrono.

**C. Denial of MRIs And Bone Scan**

Defendants contend that the denial of the MRIs and bone scan were not deliberately indifferent because they were not medically necessary to treat Plaintiff. Defs.' Mem. P. & A. 5:14-6:9. Defendants contend that they referred Plaintiff to an orthopedic specialist to determine whether he needed an MRI. *Id.* Defendants further contend that Dr. Tanji's recommendation for a bone scan was to reassure Plaintiff, and is a mere difference in medical opinion. *Id.*

Plaintiff contends that Defendants were incompetent in diagnosing Plaintiff. Pl.'s Opp'n 9:23-10:24. Such incompetence would at most rise to the level of medical negligence on the part of Defendants. However, negligence is not deliberate indifference. *Toguchi*, 391 F.3d at 1059. There must be a conscious disregard of a serious risk of harm for deliberate indifference to exist. *Id.* (citing *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003)). Here, Defendants have presented sufficient evidence that they did not consciously disregard a serious risk of harm to Plaintiff as they provided Plaintiff with anti-inflammatory medication and a muscle relaxant, and continued Plaintiff's low bunk chrono. Even construing the facts in the light most favorable to the non-moving party, the Court finds that there is no genuine dispute of material fact. Summary

judgment should be granted in favor of Defendants for the denial of the MRIs and bone scan.

### D. Defendant Neubarth

Defendant Neubarth contends that he provided appropriate medical care. Defs.' Mem. P. & A. 6:17-7:25. Defendant Neubarth contends that pursuant to his diagnosis, Plaintiff did not medically need an eggcrate mattress, an MRI for his shoulder, knee, or back, or a lower tier cell chrono. *Id.* Defendant Neubarth contends that even if his medical conclusions were incorrect, there is no evidence that he consciously disregarded a known risk of serious harm to Plaintiff. *Id.*

Plaintiff contends that he did inform Defendant of his pain issues, but received only anti-inflammatory medication. Pl.'s Opp'n 10:27-12:8. Plaintiff contends that forcing Plaintiff to climb numerous flights of stairs exposed Plaintiff to a substantial risk of harm. *Id.*

As previously stated, the denial of MRIs and the eggcrate mattress chrono did not rise to the level of deliberate indifference. Based on the undisputed facts, the denial of the low-tier chrono also does not rise to the level of deliberate indifference. Defendant Neubarth's clinical diagnosis indicated that Plaintiff did not medically require a low-tier chrono. Defendant Neubarth did not ignore Plaintiff's pain issues, as he apparently continued Plaintiff's prescription for anti-inflammatory medication and muscle relaxants. There is thus at most a difference of opinion between Plaintiff and the Defendant regarding his proper medical treatment, which does not amount to deliberate indifference. *Toguchi*, 391 F.3d at 1058. The facts, construed in the light most favorable to the non-moving party, amount at most to medical negligence, which is not deliberate indifference. *See id.* at 1059. The Court finds that there is no genuine dispute of material fact. Summary judgment should be granted in favor of Defendant Neubarth.

### E. Qualified Immunity

Defendants raise an argument for qualified immunity. As the Court has found that summary judgment should be granted in favor of Defendants, the Court declines to address the qualified immunity argument.

///

///

///

## V. Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed December 22, 2010, should be GRANTED;
2. Judgment should be entered in favor of Defendants and against Plaintiff; and
3. The Clerk of the Court be directed to close this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 22, 2011**  /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE